HOOPER, Chief Justice
(dissenting).
I respectfully dissent. According to the police officer’s testimony in this case, the facts were as follows: On the evening of August 29, 1998, Dean Polk, a Red Level police officer, saw a small 1979 Toyota truck stopped on County Road 82, after dark. The truck had no lights on, and as the officer approached the truck, he turned his blue lights on. The truck began to roll backward, and it coasted off the roadway. The officer had to put his car in reverse and back up to allow the truck to move. The officer walked up to the truck to investigate, and he saw Hamrac in the driver’s seat leaning over the steering wheel and working with some wires. He said he asked Hamrac what was wrong with the truck and that Hamrac told him the truck was “dead,” that the ignition did not work, and that he was trying to “straight-wire it.” The officer asked to see Hamrac’s driver’s license, and Hamrac said he did not have one. The officer noticed the odor of an alcoholic beverage when he approached the truck, and the odor became stronger as Hamrac spoke to the officer. When the officer asked whether he had been drinking, Hamrac answered “No.” The officer asked him to step out of the truck and perform field-sobriety tests. The officer testified that Hamrac could hardly stand up without holding to the truck and that he was unable to complete the field-sobriety tests. The officer thought Hamrac was under the influence of alcohol, because he failed the field-sobriety tests, his eyes were red, his speech was severely slurred, and his balance was extremely bad. Hamrac told the officer he had “bad knees” because of a logging accident. The officer placed Hamrac under arrest for driving under the influence of alcohol and for stopping or standing in the roadway. When it was learned that Ham-rac had a revoked license, he was also charged with driving with a revoked license.
According to Hamrac’s testimony, he did not have the keys to the truck. Charles Bush, who had borrowed the truck from his nephew Christopher Bradley Bush, testified that he had the keys. Bush also testified that he had picked up the keys at a bar owned by his mother-in-law, on the Monday following the arrest of Hamrac. Mr. Bush also testified that the truck in which Hamrac was found by the officer is in a dilapidated condition and has a fuel-pump problem. He said the wiring for the pump was run haphazardly to the battery and that this condition required that the wiring to the pump be disconnected when the engine was turned off or else the pump would continue running and run the battery down. Bush said an ignition key was still necessary to start the truck, in addition to “straight-wiring” the pump.
Hamrac testified that he had drunk too much and had passed out on the passenger side of the truck. He said he woke up, out in the country, alone in the truck, and with a car coming upon him from behind. He said he started to roll the truck off the roadway; that as he did he heard the fuel pump running and attempted to disconnect the wires operating the pump, in order to keep the pump from burning up. He disputed the officer’s testimony that he was straight-wiring the truck. He also testified that the officer never asked him if he had driven the truck and that he had never admitted to driving the truck.
*781 Benjamin Taylor testified that he went to retrieve Bush’s truck from the “impound yard” in Andalusia, where it had been taken after Hamrac’s arrest. Taylor stated that in order to start the truck, he had to take a battery from his own truck, put it in Bush’s truck, and then rewire the fuel pump under the dashboard. He stated that Bush, not the Red Level police, had given him the keys.
In my opinion, if the facts stated here establish that Hamrac was in “actual physical control” of the truck, then this Court has gone beyond the clear intention the Legislature had when it passed the DUI law. This Court has defined “actual physical control” of a motor vehicle as “[the] exclusive physical power, and present ability, to operate, move, park, or direct whatever use or non-use is to be made of the motor vehicle at the moment.” Cagle v. City of Gadsden, 495 So.2d 1144, 1145 (Ala.1986) (quoting Key v. Town of Kinsey, 424 So.2d 701, 703 (Ala.Crim.App.1982)). “Actual physical control” is determined by “a totality-of-the-circumstances test.” Car gle, 495 So.2d at 1145. I accept the Cagle requirements for determining whether someone is in “actual physical control” of a vehicle. Cagle was important in giving the courts of this State the ability to decide that a person was in control of a vehicle without proof that the person was behind the steering wheel when stopped by the police or that the person had the keys to the vehicle. It is certainly possible for a person who has been driving to slide over to the passenger seat or throw the keys out the window when the police arrive. In the Cagle ease, the defendant Cagle was found behind the steering wheel of a truck that had struck a power pole, cracking the pole in half. No evidence was produced to indicate whether the defendant had possession of the truck keys. In Cagle, even though this Court disagreed with the reasoning of the Court of Criminal Appeals, it agreed with the decision of that Court, which was that “there was insufficient evidence upon which to base a conviction.” 495 So.2d at 1147.
This Court has found sufficient evidence in cases where the engine of a parked vehicle was still warm or the driver had the keys in his possession when the police discovered him at the wheel of the vehicle. Neither of those circumstances was shown in Hamrac’s case. While I certainly have not yet come to a conclusion as to the sufficiency of the evidence in Hamrac’s case, I can say that his petition for the writ of certiorari has presented serious questions as to whether the State proved that he was in “actual physical control” of the truck when the officer stopped and tested his sobriety. Therefore, I would grant the petition.